IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

UNITED STATES OF AMERICA

vs.                                                    5:04cr51/MCR
                                                       5:06cv62/MCR/MD

LESLIE NEWTON ALLEN

### REPORT AND RECOMMENDATION

This matter is before the court upon a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. §2255 (doc. 64). The government has filed a response (doc. 75) and the defendant has filed a reply (doc. 83). The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After a careful review of the record and the arguments presented, it is the opinion of the undersigned that defendant has not raised any issue requiring an evidentiary hearing, Rules Governing Section 2255 Cases 8(a) and (b), and that the motion should be denied.

### I. BACKGROUND

Defendant was charged in a two count indictment with conspiracy to possess with intent to distribute more than 50 grams of methamphetamine (actual) and more than 500 grams of a mixture or substance containing methamphetamine, and possession of a firearm by a convicted felon. (Doc. 1). On October 14, 2004, the government filed an information and notice of intent to seek enhanced penalties (doc. 23) in which it set forth that the defendant had at least five prior felony drug convictions. In this notice the government suggested that the defendant's criminal history would subject him to a

mandatory term of life imprisonment. (Doc. 23 at 2). On October 25, 2004, the defendant entered into a written plea and cooperation agreement pursuant to which he pleaded guilty to count one of the indictment and admitted that he had previously been convicted of two or more felony drug charges. (Doc. 32). Upon adjudication of guilt, the agreement reflected that the government would move to dismiss count two of the indictment.[1] A statement of facts was signed and filed in open court on the same date. (Doc. 33). This statement of facts outlined the factual basis for the guilty plea and the evidence the government could prove at trial. Relevant to the instant motion, defendant admitted that at the time he was subject to a traffic stop he had a 9 mm semi-automatic pistol in his vehicle. (Doc. 85 at 22). The court accepted the defendant's guilty plea and directed the preparation of a PSR.

In the PSR, the probation officer relied on the defendant's account of the quantity of drugs attributable to him, 878.5 grams. (PSR ¶ 13). The corresponding base offense level of 32 and the two level adjustment for his possession of a firearm during the offense were superseded by the application of the career offender provision of § 4B1.1(b)(A) of the guidelines. After the career offender level of 37 was reduced three levels for acceptance of responsibility, defendant's total offense level was 34 and his criminal history category was VI. The applicable guideline imprisonment range was 262 to 327 months, but because the statutorily required minimum sentence of life imprisonment was greater than the maximum of the applicable guideline range, the statutorily required minimum sentence of life became the guideline sentence pursuant to §5G1.1(b). The defendant cooperated with law enforcement, and was sentenced to at term of 168 months imprisonment. (Doc. 61). He did not appeal.

In the present motion, defendant separates his claims into three grounds for relief, each relating in some manner to the two level guidelines adjustment for possession of a firearm. In his first and third claims he contends that the BOP is punishing him for

---

[1] It appears from the record that the defendant had raised an issue about the validity of the search during which the firearm was recovered, but the government never conceded that a Fourth Amendment violation had occurred.

*Case No: 5:04cr51/MCR; 5:06cv62/MCR/MD*

possession of a firearm, although he was not found guilty of this conduct beyond a reasonable doubt, and although there were Fourth Amendment issues involving the discovery of the firearm. His second claim is that counsel was ineffective because she failed to object to the probation officer's statement that the defendant's sentence would not be affected by the two level adjustment for possession of a firearm.

## II. LEGAL ANALYSIS

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal. *Massaro v. United States,* 538 U.S. 500, 503, 123 S.Ct. 1690, 1693, 155 L.Ed.2d 714 (2003); *see also United States v. Bender*, 290 F.3d 1279, 1284 (11th Cir. 2002); *United States v. Jiminez*, 983 F.2d 1020, 1022, n. 1 (11th Cir. 1993). To show a violation of his constitutional right to counsel, defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d (1984); *Williams v. Taylor*, 529 U.S. 362, 390, 120 S.Ct. 1495, 1511, 146 L.Ed.2d 389 (2000). In applying *Strickland*, the court may dispose of an ineffective assistance claim if defendant fails to carry his burden on either of the two prongs. 466 U.S. at 697, 104 S.Ct. at 2069.

Defendant contends that counsel was ineffective for her failure to object to the probation officer's statement that the two point enhancement for the firearm would not have any effect upon the defendant. Defendant's recollection of what transpired at sentencing is clouded. Defense counsel initially raised the issue of the enhancement because of her belief that it would affect her client. (Doc. 84 at 32). Defense counsel, the Assistant U.S. Attorney, the probation officer and the court all agreed that either the two point enhancement, or mention of the gun, would have an impact on the defendant once he was transferred to the custody of the BOP. (Doc. 84 at 32-37). The probation officer specifically stated that the "verbiage of a gun being in the report **does** affect their decision. (Doc. 84 at 34) (emphasis added). However, despite counsel's arguments, the court

declined to excise mention of the firearm from the PSR, and noted that even if it had done so, the weapon would still be mentioned in the Judgment and Commitment Order, upon which the BOP heavily relied. The probation officer concurred with the court's statement, noting that because the firearm charge had been dismissed, if there were no mention of the weapon on the defendant's paperwork, it would likely cause a question with the BOP. (*Id.* at 36-37). Therefore, to the extent defendant has attempted to show counsel was ineffective under *Strickland* for her failure to address this issue, he has failed. Even if there were other arguments counsel could have made, which the court does not find, defendant still was not prejudiced because the record clearly reflects that the BOP would have become aware of the firearm charge and the court's consideration of the weapon in sentencing.

Defendant's other two claims relate to his assertion that he is being "punished" by the Bureau of Prisons for his alleged possession of a firearm during the offense conduct in that he is denied the benefits of certain BOP programs or a transfer closer to his family as a result. He maintains that this is unconstitutional because he was never found guilty of this offense beyond a reasonable doubt, and because the search during which the weapon was discovered would not survive Fourth Amendment scrutiny.[2]

Defendant was not "found guilty" of an offense involving a firearm. Rather, the fact that a firearm was involved in the offense conduct was considered in reference to what is called an "extra verdict enhancement." Defendant was expressly informed by the district court at the plea colloquy that if he entered a guilty plea, the court would decide any factual disputes about an enhancement of his sentencing, based on a preponderance of the evidence standard, rather than beyond a reasonable doubt. (Doc. 85 at 17). Defendant indicated that he understood this. The court also noted the recent decision of *United States v. Rodriguez*, 398 F.3d 1291 (11th Cir. 2005), decided one month before defendant's sentencing, holding that "extra verdict enhancements are to be considered and used in the

---

[2]Defendant's assertion that the government agreed that the search would not survive scrutiny of the Fourth Amendment has no apparent basis in fact. At sentencing, the government indicated that it had an officer ready to testify that the gun came from a "good search." (Doc. 84 at 34).

*Case No: 5:04cr51/MCR; 5:06cv62/MCR/MD*

post *Booker*[3] world." (Doc. 84 at 32); *Rodriguez*, 398 F.3d at 1301. See also *United States v. Polchantara*, ___ F.3d ___, 2006 WL 1214191 (11th Cir. 2006) ("There is no *Booker* error-of a constitutional or statutory nature-based solely on the application of extra-verdict enhancements."). Defendant's seeming assertion that the facts surrounding the extra verdict enhancement needed to be proven beyond a reasonable doubt is without merit.

Furthermore, whether the search during which the weapon was discovered meets constitutional muster is irrelevant to the question of whether the district court was permitted to consider the weapon in fashioning an appropriate sentence. It is well established that the exclusionary rule does not apply in sentencing, and district courts generally are permitted to consider even unlawfully seized evidence in sentencing. See e.g., *United States v. Delgado,* 56 F.3d 1357, 1371 (11th Cir. 1995); *United States v. Lynch,* 934 F.2d 1226, 1234 (11th Cir. 1991); *United States v. Nichols,* 438 F.3d 437, 442 (4th Cir. 2006); *United States v. Krueger,* 415 F.3d 766, 779 (5th Cir. 2005); *United States v. Brimah,* 214 F.3d 854, 858-59 (7th Cir. 2000); *United States v. Tauil-Hernandez*, 88 F.3d 576, 581 (8th Cir. 1996); *United States v. Montoya-Ortiz,* 7 F.3d 1171, 1181 (5th Cir. 1993); *United States v. Jenkins*, 4 F.3d 1338, 1345 (6th Cir. 1993); *United States v. McCrory*, 930 F.2d 63, 68-69 (D.C. Cir. 1991); *United States v. Torres*, 926 F.2d 321, 324 (3rd Cir. 1991). Defendant's assertion to the contrary is without merit.

Defendant also complains about actions taken by the BOP as a result of the two level enhancement or the mention of the firearm in his Judgment and Committal or other documents. To the extent he seeks relief against the BOP for the allegedly erroneous denial of "benefits," a § 2255 motion is not the proper procedural vehicle to raise such complaints. Even if it were, the court notes that both the United States Supreme Court and

---

[3]*United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). *Booker* found the mandatory nature of the sentencing guidelines to be unconstitutional. It followed on the heels of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 2362-63, 147 L.Ed.2d 435 (2000), in which the Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." In this case, the fact of defendant's possession of a firearm at the time of the traffic stop did not increase the penalty for his crime beyond a prescribed statutory maximum, and therefore it did not have to be submitted to a jury and proved beyond a reasonable doubt.

*Case No: 5:04cr51/MCR; 5:06cv62/MCR/MD*

the Eleventh Circuit Court of Appeals have upheld the categorical exclusion of inmates such as the defendant whose current offenses involve possession of a firearm from early release incentives such as the residential drug abuse program ("RDAP") otherwise available. *Lopez v. Davis*, 531 U.S. 230, 121 S.Ct. 714, 148 L.Ed.2d 635 (2001); *Cook v. Riley*, 208 F.3d 1314 (11th Cir. 2000). Furthermore, the primary purpose of the exclusionary rule is "to deter future unlawful police conduct." *United States v. Calandra*, 414 U.S. 338, 347, 94 S.Ct. 613, 619, 38 L.Ed.2d 561 (1974). If it does not apply at sentencing because the threat that a future sentence might be less severe is seen as insufficient deterrent to warrant its application, see *Lynch, supra,* the potential implication on future BOP determinations about custody options is even less likely to be a deterrent. Thus, it is simply illogical to require the BOP to disregard such information, even if it could be proven to have been obtained in violation of the Fourth Amendment.

Based on the foregoing, it is respectfully RECOMMENDED:
The motion to vacate, set aside, or correct sentence (doc. 64) be DENIED.

At Pensacola, Florida, this 31st day of August, 2006.

/s/ *Miles Davis*
**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy thereof. **Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.** A copy of objections shall be served upon all other parties. Failure to object may limit the scope of appellate review of factual findings. See 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).

*Case No: 5:04cr51/MCR; 5:06cv62/MCR/MD*